GERALD D. CULBERTSON, appellant, v. ABEL and BYRDIE ANDERSON, d/b/a THE HARTLEY CREAMERY, et al., appellees.

No. 49891.

(Reported in 100 N.W.2d 633)

JANUARY 12, 1960.

James & Greer, of Spencer, for appellant.

Murray & Murray, of Sheldon, and Hamilton & Hamilton, of Hartley, for appellees.

THOMPSON, J.—This litigation grows out of a collision between a panel truck owned and driven by the plaintiff and a truck owned by the defendants Anderson operating under the trade name of The Hartley Creamery and driven by the defendant Boernsen. The collision occurred at the intersection of First Street N.E. and Third Avenue E. in the Town of Hartley, about six o'clock, or a few minutes earlier, on December 7, 1954. It was stipulated that sunset in this area came at 4:46 p.m. on the date in question. First Street N.E. is 66 feet wide and runs east and west; Third Avenue is 80 feet in width and extends north and south. At the time of the accident plaintiff's truck was traveling east on First Street and defendants' vehicle was proceeding north on Third Avenue.

The streets were icy, slippery and treacherous. There is some disagreement as to exact point in the intersection where the collision took place, but as we view the case this question is not important. There is no evidence that either vehicle was proceeding at a high speed. Plaintiff says he was traveling about ten miles per hour when he entered the intersection, and that he did not see defendants' truck until the moment of impact. Defendant Boernsen says his speed was five to ten miles per hour. There are "dips" on each side of Third Avenue where First Street crosses it.

One block south of First Street N.E. and parallel with it is Maple Drive which also crosses Third Avenue. One block south of Maple is First Street S.E., likewise intersecting Third Avenue. It is Boernsen's testimony that he came into Third Avenue from Maple, where he made a left turn and proceeded north one block to the point of collision. There is also evidence,

which we think competent, that in fact he came into Third Avenue from First Street S.E., one block south of Maple Drive. This is of some importance in the case, and will be referred to later.

I. The major point in the case concerns the alleged contributory negligence of the plaintiff. At the close of all the evidence the trial court denied defendants' motion for directed verdict on the first three grounds, which asserted insufficient evidence of their negligence; but granted the motion on the following four grounds, predicated upon the negligence of the plaintiff as a matter of law; and it is from the judgment rendered upon the verdict so returned that we have this appeal.

 In fact the important question involved concerns the matter of lights upon defendants' truck. The defendants' vehicle had the directional right of way under Code section 321.319. It was the duty of the plaintiff to respect this statute, and to show affirmatively his freedom from contributory negligence. We have often so held, and have upheld peremptory verdicts in cases where the statute was not obeyed. These cases are cited and relied upon by the defendants. Olson v. Truax, 250 Iowa 1040, 1047, 1048, 97 N.W.2d 900, 905; Peterschmidt v. Menke, 249 Iowa 859, 864, 89 N.W.2d 152, 156; Jacobson v. Aldrich, 246 Iowa 1160, 1170, 68 N.W.2d 733, 739; and citations therein.

 But here, as with most rules, there are exceptions. There is substantial evidence the defendants' truck was not lighted, as it should have been under section 321.384. It was well over the prescribed one-half hour after sunset when the collision occurred. We shall discuss the evidence bearing upon the presence of lights later. Since we have concluded there was a jury question upon this point, we proceed with consideration of the exceptions to the rule of the Peterschmidt and Jacobson and other cases, supra.

No authority need be cited for the proposition that in considering the propriety of a directed verdict for the defendant we take the evidence in the aspect most favorable to the plaintiff which it will reasonably bear. It is equally well settled that the operator of a motor vehicle upon the public highways has a right to assume, until he knows or in the exercise of reasonable care should know otherwise, that others using the roads will obey

the law and will exercise due care. Rhinehart v. Shambaugh, 230 Iowa 788, 791, 298 N.W. 876, 877; Banghart v. Meredith, 229 Iowa 608, 611, 294 N.W. 918. We have often applied this rule in intersection cases. Falt v. Krug, 239 Iowa 766, 32 N.W. 2d 781; Rhinehart v. Shambaugh, supra; Lathrop v. Knight, 230 Iowa 272, 297 N.W. 291. In each of these cases, and others which might be cited, there was evidence that the vehicle approaching from the right was at such a distance that if it had been operating at a lawful speed the one coming from the left would have had time to clear the intersection without danger of a collision. There is no reason why the same reasoning should not apply when the vehicle having the directional right of way is not lighted as the law requires during darkness. In each case the driver on the left has a right to assume others will obey the law.

II. We have also said that the rule that one approaching an intersection must use due care in looking to his right, and must see what is in plain sight, is qualified by the thought that it does not apply if his vision is obstructed, or obscured, or if the vehicle approaching from the right is being operated in violation of some statutory enactment or of the rule of due care so that it was not clearly visible or was at such a distance no danger was to be apprehended if it was traveling at a lawful speed. It is a qualification of the visibility rule. In fact, if the jury had believed what we think was competent evidence for the plaintiff in the case before us, the rule would not apply because the defendants' vehicle was not clearly visible. In Peterson v. Union Motor Sales Co., 245 Iowa 1337, 1340, 1341, 66 N.W.2d 496, 498, we discussed this qualification and applied it, quoting with approval from Martin v. Reibel, 227 Minn. 106, 109, 34 N.W.2d 290, 292. Appleby v. Cass, 211 Iowa 1145, 234 N.W. 477, is factually much in point. There the driver coming from the left had looked to his right, but saw nothing coming. It was during the hours of darkness. He saw lights on a bridge 475 feet away, but no lights on defendant's car. We held the fact he saw no lights was some evidence the defendant's vehicle was not lighted; and there was a jury question on contributory negligence.

In the instant case, the plaintiff testified that as he approached the intersection of the collision he looked to his right as soon as he had reached a point past an obstructing house on the southwest corner of the intersection, where he could see to the end of the block to the south. He saw the lights on the houses along the street, but saw no car lights; although he concedes the defendants' truck must have been somewhere in the block. He says: "It had to be." The point from which he could see is variously estimated, by the plaintiff at 50 feet and by the defendants at 35. This question is not important; he says he looked when he could see. Not observing any approaching vehicle, he then drove into the intersection, where he was faced with a valley or "dip" on each side of Third Avenue, which he must cross; and he collided with the defendants' truck while crossing. He admits he did not look to his right after he entered the intersection.

This failure to look as he crossed the intersection the defendants urge is fatal to plaintiff's case. They think it convicts him of contributory negligence as a matter of law. Here they rely upon Olson v. Truax, Jacobson v. Aldrich and Peterschmidt v. Menke, all supra. In the Olson case, the language used does no more than to define the general duty of one approaching an intersection. It has no bearing on defendants' contention at this point. The Peterschmidt case turns upon the general rule that the vehicle approaching from the right was in plain sight for a considerable distance, although the plaintiff said he did not see it; and there is a holding that his failure to look at a sufficient distance back of the crossing so that he could have stopped his truck in time to avoid a collision was contributory negligence as a matter of law.

From Jacobson v. Aldrich, page 1164 of 246 Iowa, page 735 of 68 N.W.2d, defendants quote this language: "There is additionally the duty of all parties to exercise reasonable care to keep a proper lookout at all times, particularly when approaching and traversing an intersection. As in all cases, this duty is in proportion to the danger reasonably to be anticipated."

This is without doubt the law; but it does not mean that in all cases a driver must continue to look to his right after

reaching an intersection, when he has looked at some point where he could see and found nothing within the danger zone.

In fact we also said in the Jacobson case: "He who looks to his right and sees no vehicle approaching within a distance which could be covered at a lawful and prudent speed so as to cause a collision at the intersection is not guilty of contributory negligence as a matter of law if he assumes there is no danger of such an accident." Jacobson v. Aldrich, page 1165 of 246 Iowa, page 736 of 68 N.W.2d.

The proper rule is expressed in Coonley v. Lowden, 234 Iowa 731, 736, 12 N.W.2d 870, 874, 875: "A traveler is required to look for approaching trains within a reasonable distance from the crossing, but not at any particular place nor at all points. It is ordinarily for the jury to determine whether he selected a proper place for making observation and otherwise used ordinary care for his safety."

III. The foregoing discussion and holdings are predicated upon the evidence in the case which makes a jury issue upon the question whether the defendants' truck was properly lighted as it approached the intersection. The plaintiff says he looked for at least one block to his right when within 35 to 50 feet of the intersection and saw no lights except those upon the houses along the east side of the street. He further says that at the moment of impact he observed three cluster lights at the top of the cab on defendants' truck. A few minutes after the collision he looked at this truck and saw no lights burning. This evidence is somewhat negative, although very similar testimony was held to generate a jury question in Appleby v. Cass, supra. But there is something in addition.

Merle Mulder, at that time an employee of Bershaim's Repair Shop, located on First Street N.E. east of the intersection with Third Avenue, was driving a car south on Third Avenue shortly before six o'clock on the evening of the accident. He testified that when he reached the intersection of Third Avenue with First Street S.E., two blocks south of the eventual point of the collision, he met an International truck with a Hartley Creamery body. This is the type of truck the defendant Boernsen was driving at the time of the collision. When Mulder met the truck it was turning from First Street S.E. to go north on Third

Avenue. A few minutes later Mulder was at the point of the accident and saw a truck, identical with the one he had observed turning to proceed north on Third Avenue two blocks south of the collision intersection, which had been involved in the accident. It was overturned. The truck he met at Third Avenue and First Street S.E. had no lights burning, and the overturned truck which he saw at the scene of the collision was not lighted. He did not get a sufficient look at the driver of the truck he met at Third Avenue and First Street S.E. to identify him. He did not make a note of the license numbers. The truck he saw two blocks south was a dark colored truck, and the one which overturned at the place of the collision was also dark colored.

Donald Boernsen, the defendants' driver, testified that his lights were burning at all material times, and that he did not come onto Third Avenue from First Street S.E., but from Maple Drive, one block north. There were other witnesses who said they saw the right headlight burning after the accident; the left one was shattered in the collision. Vern Donnenwerth, the janitor at a school building situated on the west side of Third Avenue between Maple Drive, on the north, and First Street S.E., on the south, testified that he saw a cream truck going north past the school building between 5:30 and 6 p.m. on December 7, and about a minute later heard a noise and found there was a collision at First Street N.E. and Third Avenue, and that a cream truck had been involved. He did not notice whether it was lighted.

The defendants think it would be only speculation to permit the jury to consider whether the truck which the witness Mulder said he saw turning north on Third Avenue two blocks south of the point of the accident was the same truck which was involved in the crash. We do not agree. The truck which he saw was a dark colored Hartley Creamery International truck. While the creamery owned and operated from fifteen to seventeen trucks, as we understand the record not more than five of them were made by International Harvester Company. The collision at First Street N.E. and Third Avenue occurred within moments of the time Mulder saw the truck turning north two blocks away; and an International truck was involved in it.

In all respects so far as Mulder's observation went it answered the description of the truck he had observed at First Street S.E. and Third Avenue. The evidence was clearly for the jury as to whether the truck was the same. While the burden was always upon the plaintiff to establish his case and to offer proof of at least some of his allegations of negligence, it is noteworthy and a proper matter for the jury's consideration that no evidence was offered by the defendants tending to show that it was a different truck which Mulder saw two blocks south of the accident scene, except their denial that the Boernsen truck was there. They were, presumably at least, in charge of the records of the operation of their trucks and the routes they followed. Their only evidence was that the truck driven by Boernsen was not at the place Mulder saw such a truck at the time he fixes. Both Mulder and the school janitor saw a Hartley Creamery truck in that approximate location, but defendants make no showing of another of their vehicles having been there at that time, or that it could have been.

If the jury should determine, as we think it should have the opportunity to do, that the truck Mulder saw was the Boernsen truck, the fact that the witness said it was unlighted two blocks south of the point of the crash was material and competent evidence to sustain the plaintiff's contention in regard to lights. We have often held that speed at some distance from the point of an accident is proper evidence, within the fair discretion of the trial court. Anderson v. Elliott, 244 Iowa 670, 680, 57 N.W.2d 792, 797, and citations. So with the absence of lights. In fact, we think in view of the nearness of the place of Mulder's observation to the scene and time of the accident it would have been error for the court to deny admission of this evidence.

Our conclusion is that there was a jury question on the presence or absence of lights on the defendants' truck at and immediately prior to the time of the collision; that there was accordingly evidence of a defect in visibility which makes plaintiff's contributory negligence a question for the jury, and the cause should have been submitted to it on this issue.

IV. Defendants urge that if any of the grounds asserted in their motion for directed verdict were sound the ruling of the trial court should be affirmed even though the ground

upheld was not well taken. This is the law. Stenberg v. Buckley, 245 Iowa 622, 633, 61 N.W.2d 452, 458; State v. Eichler, 248 Iowa 1267, 1274, 83 N.W.2d 576, 580. Defendants' motion also claimed failure of proof of their negligence. But one of the grounds of negligence pleaded by the plaintiff was "In failing to have his truck properly lighted"; and other grounds asserted deficiency of lights in various ways. We have indicated in the foregoing divisions that we think there was a jury question on the absence or presence of lights on the truck. So the defendants' motion, so far as it was predicated upon failure of proof of the negligence of the defendants, was properly denied. Whether any or all of the other specifications of negligence against the defendants may be supported by competent evidence must be determined upon another trial.

The case is reversed and remanded for a new trial.

All JUSTICES concur.